**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**


**NOAH DOUGLAS WRIGHT**                                        **PETITIONER**


**v.**                          **NO. 4:23-cv-00597-KGB-PSH**


**DEXTER PAYNE**                                              **RESPONDENT**


<u>RECOMMENDATION</u>


<u>INSTRUCTIONS</u>


The following Recommendation has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

DISPOSITION

In this case, filed pursuant to 28 U.S.C. 2254, petitioner Noah Douglas Wright ("Wright") challenges his Craighead County Circuit Court conviction of battery in the first degree. Wright's challenge is premised on claims that his trial attorney was ineffective, Wright's due process rights were violated during the hearing on his petition for post-conviction relief, his sentence constitutes cruel and unusual punishment, his right to confront a witness against him was violated, and the Arkansas Court of Appeals violated his due process rights. It is recommended that this case be dismissed because his claims are procedurally barred from federal court review, were reasonably adjudicated by the state courts, or are otherwise not cognizable.

The facts giving rise to Wright's conviction were summarized by the Arkansas Court of Appeals as follows:

> On April 7, 2017, [Wright] was arguing with his girlfriend, Tiffany Painter, after she had returned to [Wright's] residence with her child after picking her up from the home of her estranged husband, Danny Painter. While arguing, [Wright] threw Tiffany down by the throat, demanded that she leave, and made various threats toward Danny. Danny responded to a phone call from Tiffany, picked Tiffany and their child up on the road as they were walking away from [Wright's] residence,

and returned with them to [Wright's] residence to pick up Tiffany's clothes.

Upon arriving, Tiffany and [Wright] resumed arguing. Danny exited the vehicle and stepped between the two of them. Although there is contradictory evidence as to who threw the first punch, at some point, [Wright] struck at Danny with a knife he had clenched in his hand, causing the knife to slash Danny's neck. [Footnote omitted]. After telling other individuals inside the residence that he had cut Danny, [Wright] left the premises and disposed of the knife.

...

At trial, during the direct examination of Danny, the State introduced his medical records, and those records were admitted into evidence without objection. Danny confirmed that he was familiar with the records and subsequently testified regarding his medical diagnosis—specifying his injury as "a 10-centimeter laceration deep to the left upper neck from post-articular to anterior to left angle of mandible with rapid bleeding." The State also asked Danny to comment on his wounds and the effects of specific medical assessments.

During cross-examination, [Wright's] attorney attempted to question Danny about whether (1) he had been drinking beer on the night of the incident; (2) a blood test was performed at the hospital; and (3) he was familiar with the results of any such blood-alcohol test contained in his medical records that had previously been admitted into evidence. [Wright's] attorney claimed that he wanted Danny to read to the jury the results of a blood test from the hospital regarding his blood-alcohol concentration.

The State objected, arguing that the records had been admitted and that any personal interpretation of what the report states would be inappropriate. The State suggested that the only reason to read any part of the report would be to lead the jury to draw inferences that would be based on facts not in

evidence, associations, and inferences for which no foundation had been laid.

[Wright's] attorney responded that he should be allowed to question Danny about the records because Danny had already testified regarding the medical evaluations contained therein and that he should be allowed to testify regarding the results of the "tox screen." [Wright's] attorney reiterated that he simply wanted Danny to read the report. [Wright's] attorney further argued that he should be able to utilize the admitted medical records to impeach Danny's testimony about his level of intoxication at the time of the incident.

The circuit court denied his request, sustained the State's objection on the basis of jury confusion, and prohibited that line of questioning relying on Arkansas Rule of Evidence 403, finding that the report had been admitted and was the best evidence of what it said. The circuit court stated, "I think that even if it is relevant or whatever, that would be so prejudicial and misleading to them—unless there is somebody on there that has some medical background—they're not going to be able to figure out what this means" in reference to a listing of "125" in the report and how it might be interpreted by Danny. The circuit court did allow [Wright's] attorney to make this argument during closing arguments.

See Wright v. State, 2019 Ark. App. 364, 584 S.W.3d 711, 712-713 (2019). Wright was convicted and sentenced as an habitual offender to a term of thirty-five years imprisonment.

Wright appealed his conviction to the state Court of Appeals. Wright's only claim on appeal involved whether the state trial court erred in limiting the cross examination of the victim, Danny Painter. Wright specifically maintained that the court erred in ruling that Danny Painter "would not be

allowed to read the results of a blood-alcohol test contained in his medical records that already had been admitted into evidence because the test results were not in a form that would be commonly understood by a jury." See Wright v. State, 2022 Ark. App. 381, 653 S.W.3d 803, 804 (2022). The state Court of Appeals found no reversible error and affirmed Wright's conviction. See Wright v. State, 584 S.W.3d 711.

Wright thereafter filed a petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37. The state trial court denied the petition, and he appealed. On appeal, Wright challenged his trial attorney's representation on two grounds, both of which involved counsel's response to the introduction, and reading in open court, of a medical report prepared by Dr. Joseph H. Sales, M.D, ("Sales"). First, he claimed that:

> ... trial counsel rendered ineffective assistance of counsel and that his lack of action resulted in the denial of due process and the right to a fair trial in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution and the Arkansas constitutional counterparts. ... [T]his occurred (1) when trial counsel failed to object to the State's entering into evidence Dr. Sales's medical report without Dr. Sales or any other expert witness's presence to explain the contents of the report to the jury and (2) when trial counsel failed to object when Prosecutor DeProw, read the medical report into evidence, which was testamentary and self-serving.

See Wright v. State, 653 S.W.3d at 808. Second, he claimed that:

> ... trial counsel's failure to enter a contemporaneous objection to the entry into evidence of Dr. Sales's medical report also denied [Wright] his constitutional right to confrontation. Wright believes this argument presents a case of first impression in that a medical report is nontestimonial and not subject to the Sixth Amendment's Confrontation Clause. [Citations omitted]. However, when Prosecutor DeProw read excerpts of the medical report into the record in open court, ... DeProw became a witness for the prosecution, and those excerpts from the medical report became testimonial ... [and] ... [Wright's] Sixth Amendment right to confront and cross-examine adverse witnesses attached. [Citations omitted].

See Wright v. State, 653 S.W.3d at 810. The state Court of Appeals found no reversible error and affirmed the denial of Wright's petition for post-conviction relief.

Wright then began this case by filing the petition at bar. In the petition, he raised several intertwined claims. In claim one, Wright maintained that his trial attorney was ineffective because of a conflict of interest manifesting itself in three respects: counsel offered no defense, save a justification defense; counsel failed to object to Sales' medical report on the ground that Sales was not present to testify; and counsel failed to object to the prosecutor reading parts of the report in open court. In claim two, Wright maintained that he was denied due process during the

hearing on his petition for post-conviction relief when the state trial court prevented him from presenting a claim. In claim three, he maintained that his sentence is cruel and unusual punishment because, given his age, the sentence is a life sentence. In claim four, Wright again maintained that his trial attorney erred when counsel failed to object to the introduction of Sales' report and failed to object to the prosecutor reading parts of the report in open court. In claim five, Wright maintained his trial attorney's failure to object to the introduction of Sales' report gave rise to a violation of Wright's right to confront a witness against him, and the state trial court erred when it allowed the prosecutor to read parts of the report in open court. In claim six, Wright maintained that he was denied due process as a result of an error made by the state Court of Appeals.

Respondent Dexter Payne ("Payne") filed a response to the petition. In the response, Payne maintained that the petition should be dismissed because one or more of Wright's claims are procedurally barred from federal court review, one or more of his claims were reasonably adjudicated by the state courts, one or more of his claims are without merit, and one or more of his claims are not cognizable in a proceeding pursuant to 28 U.S.C. 2254.

Wright then filed a reply to the response. In the reply, he largely re-argued his claims, although he did note that any procedural default should be excused on the basis of <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012).

<u>CLAIM ONE</u>. Wright first maintains that his trial attorney was ineffective because of a conflict of interest, a conflict that arose when Wright refused to accept a plea agreement and counsel became upset. Wright alleges that the conflict manifested itself in three respects: counsel offered no defense, save a justification defense; counsel failed to object to Sales' medical report on the ground that Sales was not present to testify; and counsel failed to object to the prosecutor reading parts of the report in open court.

Claim one is confusing, primarily because it is an ineffective assistance of counsel claim rolled into a conflict of interest claim. Depending upon the circumstances giving rise to an alleged conflict, and how the claim was presented to, and addressed, by the state trial court, a conflict of interest claim can be considered under the standards of either <u>Cuyler v. Sullivan</u>, 446 U.S. 335 (1980), or <u>Strickland v. Washington</u>, 466

U.S. 668 (1984). <u>See</u> <u>Henderson v. United States</u>, 2015 WL 667938 (E.D. Mo. 2015).[1]

The undersigned has serious doubts about whether the <u>Cuyler v. Sullivan</u> standard applies in this instance, as that standard is applicable when an attorney's performance was adversely affected by an actual conflict of interest which arose from jointly representing multiple defendants. <u>See</u> <u>Morelos v. United States</u>, 709 F.3d 1246 (8th Cir. 2013). Here, the alleged conflict was not caused by counsel representing multiple defendants or conflicting interests. The alleged conflict was instead caused by Wright's refusal to accept a plea agreement, which caused counsel to become upset. Regardless of whether <u>Cuyler v. Sullivan</u> or <u>Strickland v. Washington</u> is used, though, claim one warrants no relief for the reasons that follow.

Under <u>Cuyler v. Sullivan</u>, the petitioner must prove the existence of an actual conflict of interest, an actual conflict being a conflict that "adversely affects counsel's performance." <u>See</u> <u>Morelos v. United States</u>,

---

[1] <u>Cuyler v. Sullivan</u> provides that prejudice is presumed when "a defendant is able to prove his counsel's performance was adversely affected by an actual conflict of interest which arose from jointly representing multiple defendants." <u>See</u> <u>Morelos v. United States</u>, 709 F.3d 1246, 1251-1252 (8th Cir. 2013). The United States Court of Appeals for the Eighth Circuit, though, has "expressly refrained from deciding whether the lowered burden in establishing prejudice applies to actual conflicts of interest which did not arise out of multiple representation." <u>See</u> <u>Id.</u> at 1252. <u>Strickland v. Washington</u>, on the other hand, requires of a showing of, <u>inter alia</u>, actual prejudice.

709 F.3d at 1252. "'The effect must be actual and demonstrable, causing the attorney to choose to engage or not to engage in particular conduct.'" See Id. (quoting Covey v. United States, 377 F.3d 903, 908 (8th Cir. 2004)). In order to prove the conflict produced an adverse effect, the petitioner must make the following showing:

> ... "identify a plausible alternative defense strategy or tactic that defense counsel might have pursued, show that the alternative strategy was objectively reasonable under the facts of the case, and establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." Winfield v. Roper, 460 F.3d 1026, 1039 (8th Cir.2006) (quoting Covey, 377 F.3d at 908) (internal quotations omitted).

See Id.

Here, Wright alleges that his trial attorney should have pursued, but failed to pursue, the following alternative defense strategy or tactics: offer a defense, other than a justification defense; object to Sales' medical report on the ground that Sales was not present to testify; and object to the prosecutor reading parts of the report in open court. The undersigned assumes, for the sake of argument, that the strategy or tactics identified by Wright were objectively reasonable under the facts of this case. Wright has failed to show, though, that counsel's failure to pursue the strategy or tactics was linked to, or otherwise flowed from, counsel's anger over

Wright's refusal to accept a plea agreement. The undersigned declines the invitation to engage in the speculation and conjecture that is required to find such a link. Wright has therefore failed to show the existence of an actual conflict of interest, and claim one warrants no relief under the Cuyler v. Sullivan standard.

Under Strickland v. Washington, the petitioner must make a two-part showing. First, he must show that counsel's performance was deficient. See Taylor v. Steele, 6 F.4th 796 (8th Cir. 2021). Second, the petitioner must show prejudice, which requires him to demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Dorsey v. Vandergriff, 30 F.4th 752, 757 (8th Cir. 2022) (internal quotation marks and citations omitted).

(A). Counsel Offered No Defense. Wright first maintains that his trial attorney erred when counsel failed to offer a defense, other than a justification defense.[2] Wright's assertion is unavailing because he cannot show that counsel's performance was deficient.

---

[2]     A procedural default has undoubtedly occurred with respect to claim one (A), as Wright did not raise the assertion in state court. The procedural bar analysis, and specifically Martinez v. Ryan, would eventually end with the undersigned having to determine whether the assertion is a substantial claim of ineffective assistance of trial counsel. For that reason, the undersigned will consider the assertion on the merits.

Danny Painter testified that he was attacked by Wright, who cut Danny Painter "pretty bad" on the neck with a knife. See Docket Entry 8-3 at CM/ECF 186. Danny Painter was shown a photograph of the scar left from the cut and confirmed that the scar was approximately six to seven inches long. See Docket Entry 8-3 at CM/ECF 190. He was asked about the problems that resulted from his wound, and he testified as follows:

> A. I lost all feeling in the left side of my face. It's kind of like how you move with Bell's Palsey. It drooped the nerves. As Dr. Sales said, they was asleep. My ear was numb. My eye drooped. I couldn't close my eye. I had to constantly put eye drops in my eye. My lip sagged. I had a pretty good speech impediment.
>
> Q. About how long did that last?
>
> A. It lasted for about five or six months.

See Docket Entry 8-3 at CM/ECF 191.

Wright, in turn, testified that it was Danny Painter who initiated the altercation. See Docket Entry 8-3 at CM/ECF 245. Wright testified that after he had been struck "three or four times in the face," he grabbed a knife out of his pocket, it came open, and he swung at Danny Painter. See Docket Entry 8-3 at CM/ECF 246. Wright admitted that he cut Danny Painter on the neck with the knife. See Docket Entry 8-3 at CM/ECF 247.

Given those facts, it is difficult to envision a defense, other than justification, that counsel could have offered. Wright has certainly not come forward with another plausible defense.[3]

B. Counsel Failed To Object To Sales' Medical Report. Wright next maintains that his trial attorney erred when counsel failed to offer a viable objection to Sales' medical report, noting that counsel should have objected to the report on the ground that Sales was not present to testify. Wright's assertion is unavailing because it was reasonably adjudicated by the state Court of Appeals, and the undersigned accords deference to the court's adjudication.

Danny Painter's medical records were introduced at trial without objection. See Wright v. State, 584 S.W.3d at 713. The records consisted of numerous documents, one of which was a report prepared by Sales, the surgeon who attended to Danny Painter's wound. See Docket Entry 8-3 at

---

[3]    In Arkansas, battery in the first degree requires proof of, among other elements, "serious physical injury." See Ark. Code Ann. 5-13-201. Wright appears to allege that there was no medical evidence of "serious physical injury," and his trial attorney should have offered such a defense. Expert medical testimony, though, "is not required to prove serious physical injury as the finder of fact may use its common knowledge to determine whether such injury occurred." See Johnson v. State, 2017 Ark. App. 71, 510 S.W.3d 298, 301 (2017).

CM/ECF 192. The report was admitted as Exhibit 18. <u>See</u> Docket Entry 8-4 at CM/ECF 8-53.[4]

Danny Painter testified that he had reviewed Sales' medical report. <u>See</u> Docket Entry 8-3 at CM/ECF 193. Danny Painter confirmed the representations contained in the report, specifically, that the knife strike caused a "10-centimeter laceration deep to the left upper neck ... with rapid bleeding," cutting through the "SCM muscle and cut[ting] the parotid gland in half." <u>See</u> Docket Entry 8-3 at CM/ECF 193. A "left neck exploration with repair of complex wound and ligation of arterial bleeding" was required to treat the wound. <u>See</u> Docket Entry 8-3 at CM/ECF 193.

In Wright's petition for post-conviction relief, he challenged his trial attorney's failure to object to the introduction of Sales' medical report on the ground that Sales was not present to testify. The state Court of Appeals' consideration of the challenge got conflated with an issue involving other medical records touching on Danny Painter's blood alcohol level at the time of the altercation. The court nevertheless found that, despite it being unknown why Sales was not called to testify, counsel did

---

[4]     The report does not appear to address Danny Painter's blood alcohol content. Thus, Wright's claim here—that counsel failed to object to the report on the ground that Sales was not present to testify—is not related to issues surrounding Danny Painter's blood alcohol level at the time of the altercation and whether Danny Painter should have been compelled to read from the medical record in open court.

not err by failing to object to the introduction of Sales' report. The court so found for what appears to have been several reasons, two of which are noteworthy here. First, counsel's decision not to object to the introduction of the report was consistent with Wright's defense of justification and a matter of trial strategy left to counsel's discretion. Second, Wright could not show that the outcome of the trial would have been different had the report not been admitted, "especially considering that [Danny] Painter testified as to the extent of his injuries ..." See Wright v. State, 653 S.W.3d 810.

28 U.S.C. 2254(d) mandates the granting of deference to the adjudication of a claim made by the state courts and applies to an adjudication made by either a trial or state appellate court. See McCoy v. Norris, No. 5:06-cv-00261-JFF, 2007 WL 865409 (E.D. Ark. Feb. 13, 2007). 28 U.S.C. 2254(d) provides that a federal court cannot grant relief unless the state court (1) contradicts or unreasonably applies United States Supreme Court precedent, or (2) makes an adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See Shoop v. Twyford, 596 U.S. 811 (2022).[5]

---

[5]     A state court adjudication contradicts United States Supreme Court precedent if the state court applies a rule different from the governing law as set forth in Supreme Court precedent or the state court decides a case differently than the Supreme Court

The question is not whether the state court's determination is incorrect. See Id. The question is whether the state court's determination is unreasonable, a substantially higher threshold than whether the determination is incorrect. See Id.[6]

The state Court of Appeals' adjudication of Wright's assertion did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, and the adjudication was not based on an unreasonable determination of the facts in light of the evidence presented. The state Court of Appeals recognized and reasonably applied clearly established federal law as announced in Strickland v. Washington in finding that trial counsel was not ineffective. As the court found, Wright's defense was one of justification, not that Danny Painter's injuries were minor, and Sales' report had little bearing on Wright's defense. To the extent Sales'

---

has on a set of materially indistinguishable facts. See White v. Kelley, 824 F.3d 753 (8th Cir. 2016). A state court adjudication unreasonably applies Supreme Court precedent if the state court correctly identifies the governing law but unreasonably applies the law to the facts of the case. See Id. An adjudication based on unreasonable determination of the facts occurs only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings are not supported by the record. See White v. Dingle, 757 F.3d 750 (8th Cir. 2014).

[6]     Taken together, Strickland v. Washington and 28 U.S.C. 2254(d) establish a doubly deferential standard of review. See Williams v. Roper, 695 F.3d 825 (8th Cir. 2012).

report had bearing on Wright's defense of justification, Wright cannot show that the outcome of the trial would have been different had Sales' report not been admitted, particularly in light of the fact that Danny Painter testified to his severe injuries.

C. Counsel Failed To Object To The Prosecutor Reading Parts Of Sales' Medical Report. Wright next maintains that his trial attorney erred when counsel failed to object to the prosecutor reading parts of Sales' medical report in open court. This assertion is also unavailing because it too was reasonably adjudicated by the state Court of Appeals, and the undersigned accords deference to the court's adjudication.

During the prosecutor's direct examination of Danny Painter, the prosecutor introduced Sales' medical report without objection as Exhibit 18. See Docket Entry 8-3 at CM/ECF 192. The prosecutor questioned Danny Painter about the details of the report and the following exchange occurred between them:

> Q. I'm going to read you a portion of these records and tell me if you disagree with that, okay?
>
> A. Yes, sir.
>
> Q. Dr. Sales notes a 10-centimeter laceration deep to the left upper neck from postauricular to anterior to left angle of mandible with rapid bleeding. Does that sound familiar?

A. Yes, sir.

Q. Is that the injury we've been talking about?

A. Yes, sir.

Q. The procedure he describes is left neck exploration with repair of complex wound and ligation of arterial bleeding. Does that sound familiar?

A. Yes, sir.

Q. His diagnosis again is 10-centimeter deep left neck laceration from postauricular to the left angle of mandible. That's kind of complicated, but is that the wound we're talking about?

A. Yes.

Q. Laceration cut through SCM muscle and cut parotid gland in half. Rapid bleeding was from facial artery and multiple smaller arterial bleeding sites in parotid gland. Is that the same injury we're talking about?

A. Yes, sir.

See Docket Entry 8-3 at CM/ECF 193-194.

In Wright's petition for post-conviction relief, he challenged his trial attorney's failure to object to the prosecutor reading parts of Sales' medical report in open court. The state Court of Appeals' consideration of the challenge got conflated with a Confrontation Clause argument made by Wright, specifically, that the prosecutor became a witness when he read

parts of the report. The court nevertheless found that counsel did not err by failing to object to the prosecutor reading parts of the report. The court so found because an objection would have been meritless as the report had already been admitted into evidence.

The state Court of Appeals' adjudication of Wright's assertion did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, and the adjudication was not based on an unreasonable determination of the facts in light of the evidence presented. The state Court of Appeals recognized and reasonably applied clearly established federal law as announced in <u>Strickland v. Washington</u> in finding that trial counsel was not ineffective. As the court found, Sales' medical report had already been admitted into evidence when the prosecutor read from it. The court could and did find that an objection at that juncture would have been meritless, and counsel was not ineffective for "failing to make a meritless objection." <u>See</u> <u>Wright v. State</u>, 653 S.W.3d at 811.

<u>CLAIM TWO</u>. Wright next maintains that he was denied due process during the hearing on his petition for post-conviction relief when the state trial court prevented him from presenting a claim. He alleges that the State was allowed to present its case in full, but he "did not get his first claim

read to the [c]ourt before the court stopped him." <u>See</u> Docket Entry 1 at CM/ECF 5.

Wright's claim warrants no relief. As will be more fully explained below, it is procedurally barred from federal court review.

A federal court cannot consider a claim if the petitioner failed to first present it to the state courts in accordance with the state's procedural rules. <u>See</u> <u>Shinn v. Ramirez</u>, 596 U.S. 366. A claim not so presented may nevertheless be considered in one of two instances. First, it can be considered if the petitioner can show cause for his procedural default and prejudice. <u>See</u> <u>Burford v. Payne</u>, No. 4:20-cv-00398-KGB-JJV, 2020 WL 8299805 (E.D. Ark. July 15, 2020), report and recommendation adopted, No. 4:20-cv-00398-KGB, 2021 WL 280880 (E.D. Ark. Jan. 27, 2021). Second, the claim can be considered if the petitioner can show that the failure to consider the claim will result in a fundamental miscarriage of justice, that is, a constitutional violation has resulted in the conviction of one who is actually innocent. <u>See</u> <u>Id</u>.

Wright did not present his second claim to the state courts. A procedural default has therefore occurred with respect to the claim. The question is whether he can show cause and prejudice for the default, or that he is actually innocent.

Wright maintains that his procedural default should be excused on the basis of <u>Martinez v. Ryan</u>, a case in which the United States Supreme Court held that ineffective assistance of post-conviction counsel can excuse the procedural default of a substantial claim of ineffective assistance of trial counsel. The <u>Martinez v. Ryan</u> exception, though, only excuses the procedural default of a claim of ineffective assistance of trial counsel. The exception excuses no other type of claim. <u>See</u> <u>e.g.</u>, <u>Lane v. Kelley</u>, No. 5:16-cv-00355-DPM-JTR, 2017 WL 5473925 (E.D. Ark. Nov. 14, 2017), report and recommendation adopted, No. 5:16-cv-00355-DPM, 2017 WL 6542748 (E.D. Ark. Dec. 21, 2017).

Wright's second claim is not a substantial claim of ineffective assistance of trial counsel. The claim is instead a challenge to the manner in which the state trial court conducted the hearing on his petition for post-conviction relief. Because it is such a claim, it cannot be salvaged by <u>Martinez v. Ryan</u>.

Will the failure to consider Wright's second claim result in a fundamental miscarriage of justice? The undersigned thinks not as Wright admitted grabbing a knife out of his pocket, the knife came open, and he struck and seriously injured Danny Painter with the knife. Wright has offered no evidence, new or otherwise, that he is actually innocent.

CLAIM THREE. Wright next maintains that his sentence is cruel and unusual punishment because, given his age, the sentence is a life sentence. In support of his claim, he alleges the following:

> Upon [c]onviction, Petitioner was sentenced to [thirty-five years] under which he must serve 100% of the 35 year sentence. Said sentence is violative of the Eighth Amendment's ban[] on Cruel and Unusual Punishment. On the date of sentencing, Petitioner was [thirty-six years] of age and afflicted with Type One Diabetes. His normal life expectancy outside of prison would be 73.5 years. However this number must be discounted because life in prison[,] the Arkansas Division of Correction's Prison System[,] is far from being medically adequate.

See Docket Entry 1 at CM/ECF 5.

Wright's third claim warrants no relief for the same reason his second claim warrants no relief: claim three is procedurally barred from federal court review. He did not present claim three to the state courts, and a procedural default has occurred. He cannot show cause and prejudice for his default or that he is actually innocent, as he did not dispute striking and seriously injuring Danny Painter with a knife. Martinez v. Ryan does not salvage the claim because it is not a substantial claim of ineffective assistance of trial counsel, and the failure to consider the claim will not result in a fundamental miscarriage of justice.

CLAIM FOUR. In claim four, Wright again maintains that his trial attorney erred when counsel failed to object to the introduction of Sales' report and failed to object to the prosecutor reading parts of the report in open court. The claim warrants no relief because it is a re-hashing of claims one (B) and (C) and was reasonably adjudicated by the state Court of Appeals. As before, the undersigned accords deference to the court's adjudication of the assertions. The state Court of Appeals recognized and reasonably applied clearly established federal law as announced in Strickland v. Washington and found that trial counsel was not ineffective. The court could and did so find for two reasons.

First, Wright's defense was one of justification, not that Danny Painter's injuries were minor, and Sales' medical report had little bearing on Wright's defense. To the extent the report had bearing on Wright's defense of justification, Wright cannot show that the outcome of the trial would have been different had the report not been admitted, particularly in light of the fact that Danny Painter testified to his severe injuries.

Second, as the state Court of Appeals found, Sales' medical report had already been admitted into evidence when the prosecutor read from it. The court could and did find that an objection at that juncture would have been meritless, and counsel was not ineffective for failing to object.

CLAIM FIVE. Wright next maintains that his trial attorney's failure to object to the introduction of Sales' report gave rise to a violation of Wright's right to confront a witness against him, and the state trial court erred when it allowed the prosecutor to read parts of the report in open court. The claim warrants no relief because it is largely a re-hashing of claims one (B) and (C) and was reasonably adjudicated by the state Court of Appeals. To the extent claim five is not a re-hashing, it warrants no relief because it was reasonably adjudicated by state Court of Appeals or is otherwise without merit. The undersigned so finds for three reasons.

First, the undersigned again notes that Wright's defense was one of justification, and Sales' medical report had little bearing on Wright's defense. To the extent the report had bearing on Wright's defense, he cannot show that the outcome of the trial would have been different had the report not been admitted.

Second, Sales' medical report was introduced and admitted without objection. The state trial court cannot be faulted for allowing the admission of a report that was not opposed and was not irrelevant.

Third, Sales' medical report had already been admitted into evidence when the prosecutor read from parts of it. The prosecutor cannot be faulted for reading from an exhibit that had already been admitted.

CLAIM SIX. Wright last maintains that he was denied due process as a result of an error made by the state Court of Appeals. The error was as follows: the appellate court observed that the prosecutor read from parts of Sales' medical report during closing argument, and "[t]he Confrontation Clause simply does not bar a prosecutor from reading from evidence during closing argument." See Wright v. State, 653 S.W.3d at 811. Wright notes, however, that the prosecutor read from parts of the report during the direct examination of Danny Painter, not during closing argument. The claim, though, warrants no relief.

It is axiomatic that "federal habeas corpus relief does not lie for errors of state law." See Lewis v. Jeffers, 497 U.S. 764, 780 (1990). Instead, a federal court is limited to determining whether a conviction violates the Constitution, laws, or treaties of the United States. See Estelle v. McGuire, 502 U.S. 62 (1991).

Wright's claim does not allege the violation of the Constitution, laws, or treaties of the United States. The claim simply identifies an error made by the state Court of Appeals in its written decision and is not cognizable in this proceeding. Even were the undersigned to find that the claim is indeed cognizable, it is procedurally barred from federal court review. Wright did not present claim six to the state courts, and a procedural

default has occurred. He cannot show cause and prejudice for his default or that he is actually innocent, as he did not dispute striking and seriously injuring Danny Painter with a knife. <u>Martinez v. Ryan</u> does not salvage the claim because it is not a substantial claim of ineffective assistance of trial counsel, and the failure to consider the claim will not result in a fundamental miscarriage of justice.

Given the foregoing, it is recommended that Wright's petition be dismissed, all requested relief be denied, and judgment be entered for Payne. In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a certificate of appealability should also be denied. Myers cannot make a "substantial showing of the denial of a constitutional right." <u>See</u> 28 U.S.C. 2253(c)(2).

DATED this 6th day of February, 2024.


_____
UNITED STATES MAGISTRATE JUDGE